EXHIBIT

A

# STATE OF NORTH CAROLINA

▶ File No.

14CVS1639

___Wake___ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| Stephanie Yarbrough | |
| Address | |
| c/o Kelly T. Ensslin, Esq. | |
| City, State, Zip | |
| 7845 Colony Rd, Ste C4, Box 301 Charlotte NC 28226 | |
| **VERSUS** | |
| Name Of Defendant(s) | |
| East Wake First Charter School a/k/a East Wake Academy and Mike Lester | |

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3, 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| East Wake First Charter School a/k/a East Wake Academy | Mike Lester |
| c/o Edward V. Williams | 235 Osprey Hills Drive |
| 158 Mine Lake Court Suite 100 | |
| Raleigh　　　　NC　27615 | Bunn　　　　NC　27508 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM |
| --- | --- | --- | --- |
| Kelly T. Ensslin | 2/26/14 | 2 | ☒ PM |
| Law Offices of Kelly T. Ensslin | Signature | | |
| 7845 Colony Road, Suite C4, Box 301 | | | |
| Charlotte　　　　NC　28226 | ☒ Deputy CSC　☐ Assistant CSC　☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | ☐ AM |
| --- | --- | --- | --- |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | | ☐ PM |
| | ☐ Deputy CSC　☐ Assistant CSC　☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial.  The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

File No.

14CVS1639

_____Wake_____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff
Stephanie Williams

Address
c/o Denise Smith Cline, Esq.

City, State, Zip
16 N. Boylan Avenue Raleigh          NC          27603

**VERSUS**

Name Of Defendant(s)
East Wake First Charter School a/k/a East Wake Academy and
Mike Lester

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3, 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| East Wake First Charter School a/k/a East Wake Academy | Mike Lester |
| c/o Edward V. Williams | 235 Osprey Hills Drive |
| 158 Mine Lake Court Suite 100 | |
| Raleigh          NC  27615 | Bunn          NC  27508 |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM |
|---|---|---|---|
| Denise Smith Cline | 2/26/14 | 2 | ☒ PM |
| Law Offices of Denise Smith Cline | Signature | | |
| 16 N. Boylan Avenue | | | |
| Raleigh          NC  27603 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | ☐ AM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS1639

STEPHANIE YARBROUGH and
STEPHANIE WILLIAMS,

Plaintiffs,

v.

EAST WAKE FIRST CHARTER
SCHOOL, a/k/a, EAST WAKE
ACADEMY, and MICHAEL LESTER,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY

Defendants.

**COMPLAINT**

Defendants Stephanie Williams and Stephanie Yarbrough, by counsel, complaining of

East Wake First Charter School ("EWA") and Michael Lester, in his official and individual

capacity allege and say:

## PARTIES, JURISDICTION AND VENUE

1. Stephanie Williams is an adult citizen and resident of Johnston County, North

Carolina.

2. Stephanie Yarbrough is an adult citizen and resident of Franklin County, North

Carolina.

3. Upon information and belief, Michael Lester ("Lester") is an adult citizen and

resident of Wake County, North Carolina. At all times pertinent to this action, Lester was

chairman of the Board of EWA. He is named in this lawsuit in his official and individual

capacity.

1

4. Upon information and belief, EWA is a nonprofit corporation duly organized and existing pursuant to the laws of the State of North Carolina for the purpose of operating a charter school in Zebulon, Wake County, North Carolina pursuant to N.C. Gen. Stat. §.115C et seq.

5. To the extent the defense of sovereign immunity is available to EWA or the EWA Board of Directors or Lester, such immunity is waived pursuant to N.C. Gen. Stat. §115C-238.29F(c). Pursuant to that statute and State Board of Education policy, EWA Board of Directors (the "Board") and the members of the Board of EWA may sue and be sued and the sovereign immunity of EWA and its Board and Board Members including Lester is waived to the extent of indemnification by insurance. Upon information and belief, the EWA and the Board has purchased such insurance.

6. This Court has jurisdiction over the subject matter and the parties and venue is proper in Wake County, North Carolina, pursuant to N.C. Gen. Stat. §1-82.

## FACTUAL BACKGROUND

7. Williams became employed at EWA as a fifth grade teacher in 2010. Williams had prior teaching experience in Johnston County where she received commendation for her performance. Williams became a team leader in the Middle School of EWA and remained in this role at all relevant times.

8. Yarbrough became employed at EWA as a substitute teacher in the fall of 2006. By October, 2006, she was hired to be a full time physical education teacher assistant at EWA and remained in this role during all relevant times. .

9. Brandon Smith was the headmaster of EWA during all relevant times and until his termination in March 2012. Smith was an employee of EWA and also served as EWA's head of human resources.

2

10.    Mike Lester was the President of the EWA Board of Directors during the relevant time period, and remains the President of the EWA Board of Directors today.

11.    Prior to becoming headmaster of EWA, Brandon Smith was employed by Durham County Public Schools ("DCPS"). During his employment, a former teacher Lori Barbier also employed by Durham County Public Schools, sued Smith and the Durham County Board of Education in Durham County Superior Court. The lawsuit ("Barbier Case") was removed to the United States District Court for the Middle District of North Carolina. Upon information and belief, the Barbier Case was pending and a matter of public record when Brandon Smith was hired by EWA.

12.    The Barbier Case alleged that Brandon Smith had sexually harassed Lori Barbier and had repeatedly engaged in unwanted touching and harassment, in violation of Title VII of the Civil Rights Act of 1964. When EWA hired Mr. Smith, it had constructive notice that Mr. Smith had been accused of sexual harassment and unwanted touching of an employee under his supervision.

13.    Throughout his employment at EWA, the Board received numerous complaints about Brandon Smith's conduct. The complaints ranged from concerns about Brandon Smith's intimidating style to complaints about his harassing behavior toward female teachers and other female employees.

14.    One female employee complained directly to Mr. Lester in 2005 that Brandon Smith had engaged in unwanted touching of her and was creating a working environment that was intolerable. She worked in close physical proximity to Mr. Smith.

15. Upon information and belief, at least one other female employee also complained to Mr. Lester and/or the Board during the same period about Smith's sexual harassment and unwanted touching, but that employee was terminated by EWA.

16. Upon information and belief, Mr. Lester chose not to bring these complaints of sexual harassment to the attention of the entire Board. Instead, Mr. Lester privately met with the first employee in the home of Board Member Huey Allen. No formal investigation was conducted after the complaint and no disciplinary action against Mr. Smith was taken. Upon information and belief, the first employee was promised that she could move to a different location at EWA away from close physical proximity to Mr. Smith.

17. In fact, however, that employee was not moved to a different location for nearly a year after making her complaint. In the meantime, she had to endure the continued threat of retaliation and further unwanted touching by Brandon Smith. Even after complaining to Mr. Lester, the first employee eventually was forced to confront Brandon Smith herself in the presence of other school administrators, including High School Principal Darryl Johnson. In that confrontation, the employee stated that unless Mr. Smith's harassing and retaliatory behavior stopped she would file a lawsuit.

18. No disciplinary actions were taken with regard to Brandon Smith, despite the complaints of EWA employees to Board Chair Mike Lester. No remedial steps were taken to ensure that other EWA employees were not subjected to similar unlawful conduct. No sexual harassment training was provided to the employees of EWA. No supervision was provided to Mr. Smith or the staff of EWA by the Board to prevent any further sexual harassment.

19.     During the same time period, Mr. Lester and the Board became aware that someone had placed a copy of a federal court decision upholding the plaintiff's harassment and other claims in the Barbier Case in the mailboxes of various individuals employed by EWA.

20.     As of that time, Mr. Lester and the Board were actually and constructively aware that Brandon Smith had a history of unwanted sexual touching and harassment at his prior employment. As of 2005 Mr. Lester and the Board knew that employees complained that Mr. Smith had engaged in similar unwanted touching and harassment at EWA.

21.     Despite this knowledge, Mr. Lester and the Board continued to do fail to discipline Mr. Smith and failed to take reasonable steps to prevent future harassment.

22.     Throughout his employment at EWA, EWA never conducted an employment review or evaluation of Mr. Smith's performance. From the time of his hire and throughout his employment at EWA, EWA did not take reasonable steps to prevent or protect its employees from sexual harassment. Employees of EWA were never provided any sexual harassment training prior to Mr. Smith's termination in 2012. The sexual harassment policy adopted by EWA during the relevant time periods was inadequate to protect EWA employees who had complaints about Mr. Smith.

### Relevant Conduct toward Williams

23.     As a result of the announced departure of an Assistant Headmaster for the Middle School of EWA in the fall of 2010, Williams as a team leader was asked to assist in interviewing replacement candidates for that position.

24.     During that process in the fall of 2010, Williams and others sat around a table in the office of the Assistant Headmaster for the Middle School. Williams took notes during that meeting. Her seat was directly beside that of Plaintiff Brandon Smith.

25.     After that meeting, Williams and others were called to an all-campus meeting on or about January 18, 2011. During that meeting Williams was seated for certain periods of time and Brandon Smith remained standing. Brandon Williams twice made gestures that indicated that he wanted to speak with her. After the first time, Williams rose from her seat and went to stand next to Brandon Smith to learn what he wanted. Brandon Smith asked Williams if she thought the hiring process of the Assistant Headmaster had been effective and efficient. Williams replied that she thought it had been handled well and that she appreciated the opportunity to be a part of the process. Williams returned to her seat.

26.     Shortly afterwards, Brandon Smith again gestured to Williams to return to where he was standing. Williams returned to where Brandon Smith was standing. Brandon Smith leaned in very close to Williams and said in a quiet voice that he had noticed her during the team meeting. He said words to the effect of "it was warm in there, the lights were low, and with my low soft voice, I saw your eyes getting heavy. All I could think to myself is, 'Stephanie Williams wants to sleep with you.'"

27.     In fact, Brandon Williams' conduct was unwelcome. Williams protested that that was not the case and returned to her seat. Following that encounter and until the spring of 2012, Brandon Smith repeatedly approached Williams, physically pulled her towards him, and said words to the effect of "Stephanie Williams wants to sleep with you." On several occasions Brandon Williams pulled Williams into an embrace so close that Williams' body would be in contact with Brandon Smith's crotch and she would have to struggle to be released.

28.     In 2011 Williams met with Brandon Smith about the possibility of creating a before-and-after-school care program for EWA. After Williams explained her idea, Brandon Smith commented that Williams did not seem like herself. Williams said she was fine but said

she was concerned about her financial situation because of her son's health problems. Brandon Smith said words to the effect of "Your 'daddy' could take care of this….if you know what I mean." Brandon Smith then winked at Williams. Williams again made clear that Brandon Smith's conduct was unwelcome and replied that his comment made her "throw up a little bit in her mouth." Brandon Smith seemed upset by Williams' comment.

29. Brandon Smith would often stop by Williams' classroom and close the door, ostensibly to speak with her. On one occasion, Williams had purchased and was in the process of eating a subway sandwich when Brandon Williams came into her classroom and again closed the door. Williams apologized for the fact that she was eating. Brandon Williams said words to the effect of "I enjoy watching you eat your sandwich---may I hold it for you?"

30. In December 2011 Brandon Smith and a Board member met with Williams and other teachers who did not qualify for a longevity raise. Afterward, Brandon Smith and other Board Members came to present holiday gifts. At some point, Brandon Smith told Williams he was grateful that she understood about not receiving a longevity raise. Brandon Smith again pulled her into an unwelcome embrace. He then whispered in her ear, "You know you should have done what I asked you to do." Brandon Smith then winked at her again. Brandon Smith made it clear to Williams that if she had acceded to his unwelcome attention, she would have received a raise.

31. Brandon Smith's comments and physical contacts with Williams were at all times unwelcome and discouraged by her, but Brandon Smith did not stop his harassing conduct or comments. As a result, Williams suffered anxiety, extreme physical and emotional distress and the loss of wages.

32.     Because of the severe and pervasive nature of Brandon Smith's harassing conduct, Williams raised her concerns with several other employees of EWA because Brandon Smith was holding the position of Human Resources Director as well as Headmaster. Williams was told that the best thing for her to do was to try to stay out of his way, that others had had similar complaints. Another employee told Williams that others had suffered the same kind of harassing conduct and that she should speak with another teacher in particular, Stephanie Yarbrough.

### Relevant Conduct toward Yarbrough

33.     Stephanie Yarbrough gave birth to her youngest son in July 2009. In the Spring of 2010, Yarbrough was using a breast pump in the back of the PE office with the door locked. Brandon Smith unlocked the door and came in. Though he exited quickly, the next time he encountered Yarbrough he told her not to worry because he didn't see anything but that he would have not been disappointed if he had.

34.     Around this same time, Brandon Smith told Yarbrough that he could tell she was losing weight and that she should be sure not to lose her butt.

35.     Because Yarbrough was not fully licensed as a teacher, she was required to have periodic meetings with Brandon Smith to discuss her academic performance and schedule for completion of the program to obtain licensure. These meetings always occurred in Brandon Smith's office, and at the end, Brandon Smith would hug Yarbrough and hold her close. These hugs made Yarbrough uncomfortable and always lasted too long.

36.     On August 11, 2011, a meeting was held with Yarbrough, Brandon Smith, and other staff including Patrick Vincent, Bret Bystricky, Megan Deutschle, in Kevin Murray's office. When the meeting concluded, Yarbrough walked to the teacher's lounge to check her

mailbox. Brandon Smith walked with Yarbrough to the teacher's lounge and told her that she could not wear the pants she was wearing anymore because he might not be able to control himself. Once inside the teacher's lounge. Yarbrough turned her back to Brandon Smith to check her mailbox and when she did, Brandon Smith stuck his fingers inside Defendant Yarbrough's pants and pulled them down while he asked her to see her tattoo. Smith's actions and conduct were outrageous, unwelcome and unlawful, and caused Defendant Yarbrough to panic and suffer extreme distress.

37.    On October 21, 2011, EWA held "Cowboy Day," a day-long event created and organized by Brandon Smith. As part of Cowboy Day, horses are present on campus and available on campus for staff and students to ride. At 8:41 am that morning, Yarbrough sent a text message to Brandon Smith asking him to please let her know when the horses would be leaving that day so she could be sure she was able to ride a horse sometime that day.

38.    On November 1, 2011, when Brandon Smith next saw Ms. Yarbrough alone, he told her had not seen her for a while and that he had not heard from her since she texted him and told him she "wanted to ride something." Yarbrough corrected him and reminded him that the text referred to the horses and her desire to ride *sometime* that day. Brandon Smith persisted with his innuendo and teased that he had not known how to respond to her.

39.    Brandon Smith's comments and physical contacts with Yarbrough were at all times unwelcome and discouraged by her, but Brandon Smith did not stop his harassing conduct or comments.

40.    Because of the severe and pervasive nature of Brandon Smith's harassing conduct, Yarbrough raised her concerns with another employee of EWA in November 2011.

This employee told Yarbrough that she was the second person to confide in her that month about Brandon Smith's misconduct.

## EWA's Response

41.     Williams and Yarbrough had no effective outlet for complaint about his conduct because Smith acted as both Headmaster with authority over all of the other EWA administrators and employees as well as Human Resources Director. In early 2012, several members of the EWA Board learned that several teachers had been harassed by Brandon Smith. Upon information and belief two Board Members, Robin Hicks and Aubrey Edwards, raised the issue in a Board meeting in the context of trying to learn why the school had such high turnover rates for teachers. Despite the concerns Robin Hicks and Aubrey Edwards raised, the Board failed initially to take any action to investigate or remedy the sexual harassment.

42.     Instead Brandon Smith demanded that the Board members who had learned of the harassment be sanctioned for raising the issue in a meeting.

43.     Following that meeting, Williams and Yarbrough submitted to the Board, through Board Chairman Lester, formal written complaints about the harassing conduct of Brandon Smith. Lester and several Board members had assured Williams and Stephanie Yarborough that Brandon Smith would not learn the identity of the employees making complaints against Brandon Smith until the Board meeting at which the complaints were taken up.

44.     Even after reviewing the written sexual harassment complaints against Brandon Smith submitted by Williams and Yarbrough, Board Chairman Lester determined that Board members Hicks and Edwards had acted inappropriately in raising the issue of sexual harassment of the Plaintiffs. Just as Brandon Smith had demanded, Mr. Lester prepared a letter of sanction to

the Board members. The letter warned the Board Members that that future such complaints would jeopardize their seats on the EWA Board.

45.     Also following the receipt of the written complaints of Williams and Yarbrough, Lester conducted a regular board meeting and did nothing to address the complaints. He ultimately scheduled a special Board meeting to discuss the complaints. In the meantime, instead of providing Williams and Yarbrough any protection from retaliation from Mr. Smith, their supervisor, Mr. Lester instead showed the written complaints to Brandon Smith well in advance of the Board meeting.   Brandon Smith then contacted employees of EWA who administered the school's computer systems. Upon information and belief, Brandon Smith specifically instructed those employees to shut down the school's server so that he could read and delete various emails in the school's server. For some period after this incident, Williams and Yarbrough were unable to access their emails in the school system.

46.     Eventually, the EWA Board met and heard statements by Williams, Yarbrough and Smith. Despite the complaints of unwanted physical contact, assault and sexual harassment, the Board did not suspend or discipline Brandon Smith, but instead allowed him to remain on campus in his duties.

47.     In February 2012, Williams and Yarbrough also filed a police report with the Zebulon Police Department for assault and battery against Brandon Smith due to his unwanted physical contact, assault and sexual harassment.  This led to Brandon Smith being charged with two counts of assault on a female and two counts of sexual battery.

48.     Upon information and belief, there had been complaints of sexual harassment and physical touching by other employees of EWA prior to the complaints by Williams and Yarbrough. Throughout Smith's tenure as Headmaster, employees made complaints about

11

Smith's inappropriate conduct to EWA, its Board members and Lester. Despite these prior complaints, upon information and belief, EWA failed to investigate Smith's conduct, discipline or terminate his employment, or to put into place any preventive or remedial programs to prevent Smith's further offensive conduct.

49.     Upon information and belief, EWA, its board members and Lester knew of the complaints about Smith. Despite their knowledge of the complaints and of Smith's conduct, EWA and Lester did nothing to prevent or remedy the physical assault and battery, or sexually harassing or sexually inappropriate behavior by Smith. Despite their knowledge of the complaints and of Smith's conduct, EWA and Lester did nothing to prevent Smith from retaliating against employees who complained about Smith's conduct.

50.     Despite the serious nature of the complaints made by Williams and Yarbrough against Brandon Smith, the Board did not take appropriate steps to investigate the complaints or protect Williams or Stephanie Yarbrough from further harassment or retaliation.

51.     Upon information and belief, instead of ensuring that Williams' and Stephanie Yarbrough's claims were investigated in a timely and neutral fashion, EWA and Lester took steps instead to protect Smith and discourage any investigation into the allegations. Upon information and belief, a Board member personally appeared at the Zebulon Police Department and made statements to police investigators that he "knew for a fact" that Brandon Smith was innocent of the charges against him, but that Smith had been told to "keep his hands to himself." This conduct was willful, wanton and done with malice.

52.     Prior to the termination of Smith, EWA and Lester did not take reasonable steps to prevent, investigate or remedy sexual harassment of Williams and Yarbrough by Smith. Although EWA had a policy that supposedly prohibited sexual harassment, that policy was

inadequate and did not constitute a reasonable effort by the school to prevent harassment or retaliation against employees who had complaints, especially against the headmaster.

53.　　Prior to the termination of Smith, EWA provided no sexual harassment training for employees. Additionally, throughout Smith's tenure as Headmaster, Smith acted as EWA's only Human Resources official. No other employee at EWA was authorized to receive or take action to resolve or remedy complaints of sexual or other harassment.

54.　　Prior to the complaints of Williams and Stephanie Yarborough, other EWA employees had complained to the Board and to Lester that Smith sexually harassed them. Despite those complaints, Lester and the Board continually failed to take timely, adequate or reasonable steps to prevent, investigate or remedy the harassment by Brandon Smith.

55.　　After the termination of Brandon Smith and despite the serious nature of the complaints against him by Williams and others, the severe and pervasive hostile environment at EWA has persisted. Since Brandon Smith's termination, EWA has organized and sponsored school-sponsored events during school hours and on school property to support Brandon Smith with the knowledge of the Board and Michael Lester.

56.　　After the termination of Brandon Smith, EWA and Lester continued to take steps to make their continued allegiance to Brandon Smith apparent. In meetings conducted after the termination, EWA management made statements suggesting that the termination and subsequent sexual harassment training was the fault of Williams and Yarbrough, instead of Brandon Smith.

57.　　Upon information and belief, Smith had sexually harassed employees at other schools where he was employed prior to becoming Headmaster at EWA, and had either been dismissed or resigned his positions as a result. Upon information and belief, EWA and Lester knew or should have known of Smith's prior conduct.

58. In October 2013, Smith was convicted in a jury trial in Wake County Superior Court of sexual battery and assault on a female with regard to his conduct towards Yarbrough and sentenced to one hundred and twenty days in jail. Brandon Smith is now a registered sex offender. The jury hung with regard to similar charges as to Williams. As a result of his conviction, EWA and Lester are collaterally estopped from urging that sexual battery and assault did not occur.

## COUNT I: ASSAULT (RESPONDEAT SUPERIOR)
## (WILLAMS v. EWA AND LESTER)

59. The allegations set forth in paragraphs 1 through 55 are re-alleged as if fully set forth herein.

60. Smith deliberately and with intent repeatedly placed Williams in immediate apprehension of harmful or offensive contact on a number of occasions.

61. EWA and Lester knew or should have known of Smith's inappropriate actions including placing employees in apprehension of harmful or offensive physical contact. During his employment at EWA, EWA and Lester learned of instances both at EWA and at other places of employment in which Smith was accused of sexual harassment and unwanted touching of employees under his supervision. Despite that knowledge, EWA and Lester failed to take actions to prevent such contact.

62. Smith's intentional assaults upon Williams occurred in the course of his employment as Headmaster of EWA and at the time of the assault, he was acting on behalf of EWA such that EWA is liable for his assault.

63. In the alternative, the assault of Williams was ratified by EWA because it knew or should have known that Smith would engage in assaultive behavior toward females as he had done in the past, and EWA gave him management authority over females. The assault was

14

further ratified by EWA when it failed to conduct a timely, thorough, and competent investigation into William's complaint and failed to appropriately discipline Smith and remove him from EWA campus.

64.     Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from placing Williams in immediate apprehension of harmful or offensive contact. Instead EWA and Lester actively took steps to protect Smith in his position at EWA.

65.     Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing and sanctioning Board members who sought to stop the harassment from occurring.

66.     In failing to protect them from Smith's conduct, and in permitting steps to be taken to cover up his wrongdoing, EWA and Lester, in his official and individual capacity, ratified Smith's assault upon Williams.

67.     EWA and Lester acted willfully and with intent in protecting Smith in his position as Headmaster despite his history of misconduct and assault. As a result, they are vicariously liable to Williams for Smith's assaults against her.

68.     As a result of their conduct, Williams has suffered damages in an amount in excess of $10,000.

## COUNT II: ASSAULT (RESPONDEAT SUPERIOR)
## (YARBROUGH v. EWA AND LESTER)

69.     The allegations set forth in paragraphs 1 through 64 are re-alleged as if fully set forth herein.

70.     Smith deliberately and with intent placed Yarbrough in immediate apprehension of harmful or offensive contact.

71.     EWA and Lester knew or should have known of Smith's inappropriate actions including placing employees in apprehension of harmful or offensive physical contact. Despite that knowledge, EWA and Lester failed to take actions to prevent such contact.

72.     Smith's intentional assaults upon Yarbrough occurred in the course of his employment as Headmaster of EWA and at the time of the assault, he was acting on behalf of EWA such that EWA is liable for his assault.

73.     In the alternative, the assault of Yarbrough was ratified by EWA because it knew or should have known that Smith would engage in assaultive behavior toward females as he had done in the past, and EWA gave him management authority over females. The assault was further ratified by EWA when it failed to conduct a timely, thorough, and competent investigation into Yarbrough's complaint and failed to appropriately discipline Smith and remove him from EWA campus..

74.     Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from placing Yarbrough in immediate apprehension of harmful or offensive contact. Instead EWA and Lester actively took steps to protect Smith in his position at EWA.

75.     Lester in his individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing.

76.     In failing to protect them from Smith's conduct, EWA and Lester ratified Smith's assault upon Yarbrough.

77.     EWA and Lester acted willfully and with intent in protecting Smith in his position as Headmaster despite his history of misconduct and assault. As a result, they are vicariously liable to Yarbrough for Smith's assaults against her.

78.     As a result of their conduct, Yarbrough has suffered damages in an amount in excess of $10,000.

## COUNT III: BATTERY (RESPONDEAT SUPERIOR)
## (WILLIAMS v. EWA and LESTER)

79.     The allegations set forth in paragraphs 1 through 73 are re-alleged as if fully set forth herein.

80.     On a number of occasions Brandon Smith has engaged deliberately and with intent with offensive touching of Williams without Williams' consent.

81.     EWA and Lester knew or should have known of Smith's inappropriate actions including his offensive touching of employees of EWA. Despite that knowledge EWA and Lester failed to take actions to prevent such contact.

82.     Smith's intentional battery upon Williams occurred in the course of his employment as Headmaster of EWA and at the time of the battery, he was acting on behalf of EWA such that EWA is liable for his battery.

83.     In the alternative, the battery of Williams was ratified by EWA because it knew or should have known that Smith would engage in such behavior toward females as he had done in the past, and EWA gave him management authority over females. The battery was further ratified by EWA when it failed to conduct a timely, thorough, and competent investigation into William's complaint and failed to appropriately discipline Smith and remove him from EWA campus.

84.     Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from engaging in battery as against Williams. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official

capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing.

85. In failing to protect them from Smith's conduct, EWA and Lester ratified Smith's battery upon Williams.

86. EWA and Lester acted willfully and with intent in protecting Smith in his position despite his history of misconduct and are liable to Williams for Smith's battery.

87. As a result of their conduct, Williams suffered damages in an amount in excess of $10,000.

## COUNT IV: BATTERY (RESPONDEAT SUPERIOR) (YARBROUGH v. EWA and LESTER)

88. The allegations set forth in paragraphs 1 through 81 are re-alleged as if fully set forth herein.

89. Smith has engaged deliberately and with intent in offensive touching of Yarbrough without her consent.

90. EWA and Lester knew or should have known of Smith's inappropriate actions including his offensive touching of employees of EWA. Despite that knowledge EWA and Lester failed to take actions to prevent such contact.

91. Smith's intentional battery upon Yarbrough occurred in the course of his employment as Headmaster of EWA and at the time of the battery, he was acting on behalf of EWA such that EWA is liable for his battery.

92. In the alternative, the battery of Yarbrough was ratified by EWA because it knew or should have known that Smith would engage in such behavior toward females as he had done in the past, and EWA gave him management authority over females. The battery was further ratified by EWA when it failed to conduct a timely, thorough, and competent investigation into

Yarbrough's complaint and failed to appropriately discipline Smith and remove him from EWA campus.

93. Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from engaging in battery as against Yarbrough. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing.

94. In failing to protect them from Smith's conduct, EWA and Lester ratified Smith's battery upon Yarbrough.

95. EWA and Lester acted willfully and with intent in protecting Smith in his position despite his history of misconduct and are liable to Yarbrough for Smith's battery.

96. As a result of their conduct, Yarbrough has suffered damages in an amount in excess of $10,000.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (RESPONDEAT SUPERIOR) (WILLIAMS v. EWA and LESTER)

97. The allegations set forth in paragraphs 1 through 78 are re-alleged as if fully set forth herein.

98. Brandon Smith exerted supervisory control over Williams and engaged in physical touching and repeated sexual advances toward her.

99. Brandon Smith's conduct toward Williams was outrageous in character and extreme in degree.

100. Smith's conduct toward Williams was intended to cause and did cause severe emotional distress to Williams.

101.    EWA and Lester knew or should have known of Smith's inappropriate actions including his past offensive touching and intentional infliction of emotional distress of employees of EWA. Despite that knowledge EWA and Lester failed to take actions to prevent such conduct. EWA tolerated and authorized such conduct when it gave him management control over females knowing of his propensity to harass, assault, and batter subordinate females working for him.

102.    Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from inflicting emotional distress upon Williams. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing and admonishing board members who brought forward concerns about Smith's improper and illegal conduct.

103.    In failing to protect them from Smith's conduct, EWA and Lester ratified Smith's intentional infliction of emotional distress upon Williams.

104.    EWA and Lester acted willfully and with intent in protecting Smith in his position despite his history of misconduct and intentional infliction of emotional distress and are liable to Williams for Smith's intentional infliction of emotional distress.

105.    As a result of their conduct, Williams and Yarbrough have been damaged in an amount in excess of $10,000.

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (RESPONDEAT SUPERIOR) (YARBROUGH v. EWA and LESTER)

106.    The allegations set forth in paragraphs 1 through 98 are re-alleged as if fully set forth herein.

107. Brandon Smith exerted supervisory control over Yarbrough and engaged in offensive physical touching and sexual advances toward her.

108. Smith's conduct toward Yarbrough was outrageous in character and extreme in degree.

109. Smith's conduct toward Yarbrough was intended to cause and did cause severe emotional distress to her.

110. EWA and Lester knew or should have known of Smith's inappropriate actions including his past offensive touching and intentional infliction of emotional distress of employees of EWA. Despite that knowledge EWA and Lester failed to take actions to prevent such conduct. EWA tolerated and authorized such conduct when it gave him management control over females knowing of his propensity to harass, assault, and batter subordinate females working for him.

111. Despite their knowledge of facts related to Smith's prior acts, EWA and Lester failed to prevent Smith from inflicting emotional distress upon Yarbrough. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing and admonishing board members who brought forward concerns about Smith's improper and illegal conduct..

112. In failing to protect them from Smith's conduct, EWA and Lester ratified Smith's intentional infliction of emotional distress upon Yarbrough.

113. EWA and Lester acted willfully and with intent in protecting Smith in his position despite his history of misconduct and intentional infliction of emotional distress and are liable to Yarbrough for Smith's intentional infliction of emotional distress.

114.　As a result of their conduct, Yarbrough have been damaged in an amount in excess of $10,000.

## COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (WILLIAMS v. EWA and LESTER)

115.　The allegations set forth in paragraphs 1 through 96 are re-alleged as if fully set forth herein.

116.　Smith and Williams were each under the control and supervision of EWA, its Board and Lester. EWA and Lester had a duty of care to Williams to protect her from the wrongful acts of Smith, a co-worker with a known history of offensive, inappropriate and tortious conduct.

117.　EWA and Lester knew or should have known of Smith's inappropriate and tortious conduct including his harassment, assault and battery of employees of EWA. Despite that knowledge EWA and Lester failed to exercise due care to prevent such conduct.

118.　Despite their knowledge of facts related to Smith's prior tortious acts, EWA and Lester failed to prevent Smith from engaging in such conduct with Williams. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing.

119.　EWA and Lester's negligent breach of their duty of due care has proximately caused Williams to suffer emotional and physical injury.

120.　As a result of their conduct, Williams has been damaged in an amount in excess of $10,000.

## COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (YARBROUGH v. EWA and LESTER)

121.     The allegations set forth in paragraphs 1 through 102 are re-alleged as if fully set forth herein.

122.     Smith and Yarbrough were each under the control and supervision of EWA, its Board and Lester. EWA and Lester had a duty of care to Yarbrough to protect her from the wrongful acts of Smith, a co-worker with a known history of offensive, inappropriate and tortious conduct.

123.     EWA and Lester knew or should have known of Smith's inappropriate and tortious conduct including his harassment, assault and battery of employees of EWA. Despite that knowledge EWA and Lester failed to exercise due care to prevent such conduct.

124.     Despite their knowledge of facts related to Smith's prior tortious acts, EWA and Lester failed to prevent Smith from engaging in such conduct with Williams and Yarbrough. Instead EWA and Lester actively took steps to protect Smith in his position at EWA. Lester in an individual and official capacity took steps to protect Smith in his position at EWA, including trying to cover up Smith's wrongdoing.

125.     EWA and Lester's negligent breach of their duty of due care has proximately caused Yarbrough to suffer emotional and physical injury.

126.     As a result of their conduct, Yarbrough has been damaged in an amount in excess of $10,000.

## COUNT IX: SEXUAL HARASSMENT
## (WILLIAMS v. EWA and LESTER)

127.     The allegations set forth in paragraphs 1 through 107 are re-alleged as if fully set forth herein.

128.    Brandon Smith's repeated and severe harassment of Williams is based on sex and has at all times been unwelcome.

129.    As a result of the repeated sexual harassment by Brandon Smith, Williams has been subjected to a severe and pervasive hostile environment that has substantially affected a term or condition of her employment and created a hostile work environment.

130.    Brandon Smith's repeated and severe harassment of Williams directly affected a term or condition of her employment in that Brandon Smith told Williams she would have gotten a raise or other additional compensation if she had acceded to his sexual advances.

131.    Williams has filed complaints against both EWA and Brandon Smith individually with the EEOC under Title VII of the Civil Rights Act of 1964 as amended. On May 10, 2013, the EEOC issued a finding that EWA had violated Title VII.

132.    Although EWA and the Board knew or should have known of Brandon Smith's harassment of Williams and others, it did not take reasonable steps to prevent, investigate or remedy the hostile environment created by Brandon Smith.

133.    By and through its Board Chairman Michael Lester, EWA and the Board created an even more hostile and sexually harassing environment by discouraging complaints and failing to adequately investigate or remedy the hostile environment.

134.    Although Lester knew of Brandon Smith's harassment of Williams and others, as Chairman of the Board, he did not direct the Board to take reasonable steps to prevent, investigate or remedy the hostile environment created by Brandon Smith.

135.    As a result of Lester's own actions and omissions, both individually and in his official capacity, Williams was subjected to hostile and sexually harassing environment.

136. By discouraging complaints and failing to adequately investigate or remedy the hostile environment, Lester perpetrated the hostile environment and prevented EWA from taking the legally required steps to prevent, investigate and remedy sexual harassment in the school.

137. As Board Chairman of the EWA Board, Michael Lester had an obligation to lead the Board to take steps to prevent, investigate and remedy Brandon Smith's harassment. Instead, upon information and belief, Michael Lester actively took steps to discourage any such prevention, investigation of Williams's complaint and that of other employees. Lester also failed to inform the Board about Smith's conduct throughout his tenure as Board chair.

138. In failing to promptly take steps to prevent, investigate or remedy the hostile environment created by Brandon Smith, EWA and Lester individually and officially ratified the actions of Brandon Smith.

139. Brandon Smith's actions with regard to Williams constitute quid pro quo sexual harassment in that they affected terms and condition of William's employment.

140. Williams has filed complaints against both EWA and Brandon Smith with the EEOC under Title VII of the Civil Rights Act of 1964 as amended. Williams received a right to sue letter from the EEOC on November 14, 2013.

## COUNT X: SEXUAL HARASSMENT<br>(YARBROUGH v. EWA and LESTER)

141. The allegations set forth in paragraphs 1 through 122 are re-alleged as if fully set forth herein.

142. Brandon Smith's repeated and severe harassment of Yarbrough is based on sex.

143. Brandon Smith's repeated and severe harassment of Yarbrough has at all times been unwelcome.

144.     Brandon Smith's repeated and severe harassment of Yarbrough resulted in a hostile work environment.

145.     Although EWA and the Board knew or should have known of Brandon Smith's sexual harassment of Yarbrough and others, they did not take reasonable steps to prevent, investigate or remedy the hostile environment created by Brandon Smith.

146.     By and through its Board Chairman Michael Lester, EWA and the Board created an even more hostile and sexually harassing environment by discouraging complaints and failing to adequately investigate or remedy the hostile environment.

147.     Although Lester knew of Brandon Smith's harassment of Yarbrough and others, as Chairman of the Board, he did not direct the Board to take reasonable steps to prevent, investigate or remedy the hostile environment created by Brandon Smith. Instead, upon information and belief, Michael Lester actively took steps to discourage any such prevention, investigation of Yarbrough's complaint and that of other employees.

148.     By discouraging complaints and failing to adequately investigate or remedy the hostile environment, Lester perpetrated the hostile environment and prevented EWA from taking the legally required steps to prevent, investigate and remedy sexual harassment in the school.

149.     In failing to promptly take steps to prevent, investigate or remedy the hostile environment created by Brandon Smith, EWA and Lester ratified the actions of Brandon Smith.

150.     Yarbrough has filed complaints against both EWA and Brandon Smith with the EEOC under Title VII of the Civil Rights Act of 1964 as amended. On May 10, 2013, the EEOC issued a finding that EWA had violated Title VII. Yarbrough received a right to sue letter on November 14, 2013.

### COUNT XI: NEGLIGENT HIRING
### (WILLIAMS v. EWA)

151.     The allegations set forth in paragraphs 1 through 132 are re-alleged as if fully set forth herein.

152.     EWA and its Board had a legal duty of care to hire a Headmaster for the school who would both abide by the law and refrain from abusive or harassing conduct as to EWA employees or students.

153.     Upon information and belief, EWA and its Board knew or should have known prior to hiring Smith that he had a history of sexually harassing conduct as to employees on school grounds in other schools in the region.

154.     Upon information and belief, EWA and the Board did not use the reasonable care an ordinary, cautious and prudent employer would use under similar circumstances to investigate the background and prior conduct of Brandon Smith.

155.     As a result of EWA's negligence, Williams has suffered damages in an amount in excess of $10,000.

## COUNT XII: NEGLIGENT HIRING
## (YARBROUGH v. EWA)

156.     The allegations set forth in paragraphs 1 through 137 are re-alleged as if fully set forth herein.

157.     EWA had a legal duty of care to hire a Headmaster for the school who would both abide by the law and refrain from abusive or harassing conduct as to EWA employees or students.

158.     Upon information and belief, EWA and its Board knew or should have known prior to hiring Smith that he had a history of sexually harassing conduct as to employees on school grounds in other schools in the region.

159.     Upon information and belief, EWA and the Board did not use the reasonable care an ordinary, cautious and prudent employer would use under similar circumstances to investigate the background and prior conduct of Brandon Smith.

160.     As a result of EWA's and Lester's negligence, Yarbrough suffered damages in an amount in excess of $10,000.

## COUNT XIII: NEGLIGENT SUPERVISION AND RETENTION
## (WILLIAMS v. EWA and LESTER)

161.     The allegations set forth in paragraphs 1 through 142 are re-alleged as if fully set forth herein.

162.     EWA had a legal duty of care to supervise Smith as the Headmaster for the school and ensure that he was abiding by the law and refraining from abusive or harassing conduct as to EWA employees or students.

163.     Upon information and belief, EWA and its Board knew or should have known prior to hiring Smith that he had a history of sexually harassing conduct as to employees on school grounds in other schools in the region.

164.     Upon information and belief, EWA and the Board did not use the reasonable care an ordinary, cautious and prudent employer would use under similar circumstances to supervise Brandon Smith.

165.     Upon information and belief, after EWA hired Brandon Smith, EWA, the Board learned of a number of complaints of sexual harassment by Smith from EWA employees

who had suffered from such harassment. Additionally, upon information and belief it was widely known among employees of EWA that Brandon Smith harassed teachers and others at the school, and EWA knew or should have in the exercise of reasonable diligence known of his conduct. Despite this knowledge, EWA failed to use the reasonable care an ordinary, cautious and prudent employer would use to prevent such harassment as to other employees.

166.    If EWA and the Lester had used reasonable care to supervise and prevent Smith from further harassing or tortious conduct, Williams would not have suffered from his wrongful conduct.

167.    If EWA and Lester had used reasonable care to protect Williams and had disciplined or terminated Smith prior to Smith's unlawful conduct, Williams would not have suffered from his wrongful conduct. In fact, Lester in declining to inform the board of the complaints and in failing to take steps to protect Williams and others from Smith's actions, has ratified Smith's conduct.

168.    As a proximate result of the negligence of EWA supervising and retaining Smith, Williams and Yarbrough have suffered damages in excess of $10,000.

169.    As a result of EWA's and Lester's negligence, Williams suffered damages in an amount in excess of $10,000.

### COUNT XIV: NEGLIGENT SUPERVISION AND RETENTION (YARBROUGH v. EWA AND LESTER

170.    The allegations set forth in paragraphs 1 through 151 are re-alleged as if fully set forth herein.

171.     EWA had a legal duty of care to supervise Smith as the Headmaster for the school and ensure that he was abiding by the law and refraining from abusive or harassing conduct as to EWA employees or students.

172.     Upon information and belief, EWA and its Board knew or should have known prior to hiring Smith that he had a history of sexually harassing conduct as to employees on school grounds in other schools in the region.

173.     Upon information and belief, EWA and the Board did not use the reasonable care an ordinary, cautious and prudent employer would use under similar circumstances to supervise Brandon Smith.

174.     Upon information and belief, after EWA hired Brandon Smith, EWA, the Board learned of a number of complaints of sexual harassment by Smith from EWA employees who had suffered from such harassment. Additionally, upon information and belief it was widely known among employees of EWA that Brandon Smith harassed teachers and others at the school, and EWA knew or should have in the exercise of reasonable diligence known of his conduct. Despite this knowledge, EWA failed to use the reasonable care an ordinary, cautious and prudent employer would use to prevent such harassment as to other employees.

175.     If EWA and the Board had used reasonable care to supervise and prevent Smith from further harassing or tortious conduct, Yarbrough would not have suffered from his wrongful conduct.

176.     If EWA had used reasonable care to protect Williams and had disciplined or terminated Smith prior to Smith's unlawful conduct, Williams would not have suffered from his wrongful conduct.

177.     As a proximate result of the negligence of EWA supervising and retaining Smith, Williams and Yarbrough have suffered damages in excess of $10,000.

178.     As a result of EWA's and Lester's negligence, Williams and Yarbrough suffered damages in an amount in excess of $10,000.

## COUNT XV- VIOLATIONS OF ARTICLE I, SECTIONS 18 AND 19 OF THE NORTH CAROLINA CONSTITUTION (WILLIAM and YARBROUGH vs. EWA)

179.     The allegations set forth in paragraphs 1 through 160 are re-alleged as if fully set forth herein.

180.     In the alternative, as a result of the acts and omissions of EWA, Williams and Yarbrough have been denied their rights under Article I, Sections 18 and 19 of the North Carolina Constitution, and are entitled to recover their damages as a result of those violations.

### PRAYER FOR RELIEF

WHEREFORE, Williams and Yarbrough each pray for the following:

1.     That they each have and recover from EWA and Lester, in both his official and individual capacities in an amount in excess of $10,000 to be determined at trial;

2.     They have and recover the costs of this action, including attorney's fees;

3.     They recover punitive damages from Lester, in his official and individual capacities;

4.     They recover pre-judgment and post-judgment interest on all amounts recovered herein;

5.     For a trial by jury;

6.     And for other such relief as it is entitled by law or by equity.

This the 26th day of February, 2014

**LAW OFFICES OF DENISE SMITH CLINE, PLLC**

Denise Smith Cline
State Bar No. 10837
16 North Boylan Avenue
Raleigh, NC 27603
denise@dsclinelaw.com
Office: (919) 926-0734
Fax: (980) 225-5189

**LAW OFFICES OF KELLY TILLOTSON ENSSLIN**

Kelly Tillotson Ensslin
State Bar No. 33908
7845 Colony Road
Suite C4, Box 301
Charlotte, NC 28226
Email: kelly@ktelaw.com
Office: (919) 710-8199
Facsimile: (877) 645-7550